# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8428 | **DATE** | 5/5/2004 |
| **CASE TITLE** | Kojis, et al. vs. Equifax, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ___ __.

(3) ☐ Answer brief to motion due ___. Reply to answer brief due ___.

(4) ☐ Ruling/Hearing on ___ set for ___ at ___.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ set for ___ at ___.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ set for ___ at ___.

(7) ☐ Trial[set for/re-set for] on ___ at ___.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ at ___.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Report and Recommendation to Hon. Wayne R. Andersen submitted herewith. This court respectfully recommends that defendant Navy Federal Credit Union's Motion for Sanctions Pursuant to Rule 11 [34-1] be GRANTED; that Navy Federal Credit Union's Rule 37 Motion for Terminating Sanctions [36-1] be GRANTED; and that Plaintiffs' Motion to Dismiss Without Prejudice Due to Prosecutorial Misconduct Plus Motion for Relief from August 20, 2003 Order and Motion to Suppress Allied Denials and Howe Deposition Also Due to Prosecutorial Misconduct [56-1] be DENIED. Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the District Judge within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this court in the report and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995). All matters relating to the referral of this action having been concluded, the case is returned to the assigned judge.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | | MAY 0 ? 2004 | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | 6? | 66 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | | 5/5/2004 | |
| | | courtroom deputy's initials | | date mailed notice | |
| | GR | | | GR | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

STAN and JOHNNA KOJIS,     )
      Plaintiffs,      )   **Cause No. 02 C 8428**
                         )
     v.                  )   **Judge Wayne R. Andersen**
                         )   **Magistrate Judge Geraldine Soat Brown**
**EQUIFAX CREDIT INFORMATION**     )
**SERVICES and NAVY FEDERAL**     )
**CREDIT UNION**             )
      **Defendants.**     )

DOCKETED

MAY 0 6 2004

To: Honorable Wayne R. Andersen,
    United States District Judge

## REPORT AND RECOMMENDATION

Geraldine Soat Brown, United States Magistrate Judge

      This case comes to be heard on two motions filed by defendant Navy Federal Credit Union:

first, a Motion for Sanctions Pursuant to Rule 11 (the "Rule 11 Motion") [dkt 34], and second, a

Rule 37 Motion for Terminating Sanctions (the "Rule 37 Motion") [dkt 36]; as well as a motion filed

by plaintiffs Stan and Johnna Kojis entitled Motion to Dismiss Without Prejudice Due to

Prosecutorial Misconduct Plus Motion for Relief from August 20, 2003 Order and Motion to

Suppress Allied Denials and Howe Deposition Also Due to Prosecutorial Misconduct. [dkt 56][1] The

---

     [1] The Rule 11 motion was initially directed to both the Kojises and their attorneys (the
law firm of Krohn & Moss), but Navy Federal subsequently filed a motion to withdraw its Rule
11 motion with respect to Krohn & Moss, which was granted. [Dkt 42, 43.]

     The Rule 37 motion was captioned "Navy Federal Credit Union's Rule 37 Motion for
Terminating Sanctions," although the Notice of Motion attached to Navy Federal's Rule 37
Motion referred to the motion as "Rule 37(c) Motion for Sanctions and to Compel Plaintiff's
Depositions." [Dkt 36.] Defendant Equifax filed a Notice of Joinder in those two motions. [Dkt
32, 33.] Thus, this opinion refers to Navy Federal's motions as "Defendants'" motions.

District Judge referred the Plaintiffs' Motion and Defendants' Rule 11 Motion to this court for a report and recommendation. [Dkt 38, 60.][2] For the following reasons, this court respectfully recommends that Defendants' Rule 11 Motion and Rule 37 Motion be GRANTED, and Plaintiffs' Motion to Dismiss Without Prejudice Due to Prosecutorial Misconduct Plus Motion for Relief from August 20, 2003 Order And Motion to Suppress Allied Denials and Howe Deposition Also Due to Prosecutorial Misconduct be DENIED.

## Factual Background

Stan and Johnna Kojis ("the Kojises") filed a Complaint against defendants Navy Federal Credit Union ("Navy Federal") and Equifax Credit Information Services ("Equifax") on November 20, 2002, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and defamation. [Dkt 1.][3] In their Complaint, the Kojises alleged *inter alia* that Navy Federal and Equifax reported inaccurate information to credit reporting agencies about the Kojises' payment history on their Navy Federal accounts. (Compl. ¶¶ 7, 8, 34.) The Kojises alleged that the reporting of that inaccurate information caused them the denial of credit by Allied Mortgage Capital Corporation ("Allied") on May 29, 2002, out of pocket expenses associated with disputing that inaccurate information, emotional distress and mental anguish, and a decreased credit score which, they alleged, could result in an inability to obtain credit on future attempts. (*Id.* ¶¶ 14, 35.) The Kojises requested actual damages, statutory damages, punitive damages, attorneys' fees and costs

---

[2] Defendants' Rule 37 Motion is before this court as part of an earlier referral for discovery supervision. [Dkt 4.]

[3] The FCRA claims were alleged against both defendants; the defamation claim was alleged against only Equifax.

and other relief permitted by law. (*Id.* ¶¶ 21, 35.)

Allied is a mortgage company that originates residential mortgage loans. (Rule 11 Mem., Ex.

5, Dep. Jeanne L. Stell at 22.) [Dkt 34.] Although it was not mentioned in the Complaint, Joanna

Kojis was employed by Allied as a loan officer from December 2001 through March 2003. (*Id.* at

47-48, 50.)

During discovery, pursuant to Rule 26(a)(1) and Navy Federal's request for documents, the

Kojises' counsel produced to Defendants' counsel two documents, both dated May 29, 2002,

entitled "Statement of Credit Denial, Termination or Change" (the "Credit Denial forms" or "Credit

Denials"). (Rule 11 Mem. at 2; Exs. 2, 3.) Each of the documents stated that it was given on behalf

of Allied. The forms were virtually identical, except that the first form referred to a loan amount of

$146,600, an interest rate of 6.25% and a term of 180 months, while the second form referred to a

loan amount of $35,000, an interest rate of 13.25% and a term of 240 months. (Credit Denials.)

Both of the forms stated that the Kojises' application for credit was denied because of "Delinquent

Credit Obligations" and "Information From a Consumer Reporting Agency." (*Id.*) In addition, both

of the forms contained the following text, which appears to have been added to provide a more

detailed explanation for the decision to deny the Kojises credit:

> Recent NFCU Lates '807
> Recent NFCU Lates '800

>           \*      \*      \*

> Navy Federal Credit Union has reported a number of recent late payment activity on
> 3 accounts. Acct. #s are 421611072008-00 & 421611072008-01 & 421611072008-
> 07. Prior payment history is good on these accounts & others. Mr. & Mrs. Kojis
> stated that they were not late during these months & will contact NFCU in order have
> [sic] these items removed. If items are removed/borrowers will qualify for
> refi[nance].

(Rule 11 Mem., Ex. 2, Credit Denial.)[4] Both forms were signed "Vicki Liposchak," apparently on

behalf of Allied. (Credit Denials.) The signature "Vicki Liposchak" appears directly under Allied's

name and address at the bottom of the page. (*Id.*) The Credit Denial forms imply that the Kojises

would have qualified for the loans from Allied had it not been for the "late payment activity"

reported on the Kojises' Navy Federal accounts. (*Id.*) The forms do not identify any entity other

than Allied as having made the underwriting decision or disclosure with respect to the loans. (*Id.*)

Despite the allegation that Allied had denied their loan application, the Kojises did not

identify anyone employed by Allied or any other loan originator or credit grantor as having

"knowledge of any of the claims or defenses" alleged in the lawsuit. (Rule 11 Mem., Ex. 4, Pls.'

Resp. Interrogs. and Req. Produc. Docs. at Interrog. No. 1.) On June 27, 2003, Navy Federal took

the Rule 30(b)(6) deposition of Allied employee Jeanne Stell. Ms. Stell testified that Allied had a

loan application file for the Kojises, but it contained an automated notice that the file was

incomplete. (Stell Dep. at 53-54.) Based on Ms. Stell's testimony, it also appears that if a credit

denial had been made, it would have been issued directly from InterFirst, a division of ABN AMRO

Mortgage Group, Inc. and the entity that made the underwriting decision with respect to the Kojises'

loan application. (Stell Dep. at 51, 53-54, 66-68.) Ms. Stell testified that Allied had no record of

having issued the Credit Denial forms, of having employed anyone by the name of Vicki Liposchak,

of having received an application for a $35,000 consolidation loan from the Kojises, or of having

made any underwriting decision whatsoever regarding a loan for the Kojises. (Stell Dep. at 28-31,

37-38, 52, 54, 56-57, 66-67.) Ms. Stell also testified that she believed the signature of Vicki

---

[4] The second Credit Denial (Rule 11 Mem., Ex. 3) contains an identical paragraph except that the last word in the paragraph is "second" instead of "refi[nance]."

Liposchak on the Credit Denial forms resembled the handwriting of Johnna Kojis. (Stell Dep. at 55-56.)[5]

Upon being notified of Ms. Stell's testimony by Navy Federal's counsel, the Kojises' counsel, Larry Smith, produced a document that confirmed Ms. Stell's testimony that InterFirst, not Allied, was indeed the entity that had made the underwriting decision. (Rule 11 Mem., Ex. 6, Aff. Richard B. Polony ¶¶ 2, 6; Ex. 7, July 3, 2003 E-mail from L. Smith to R. Polony attaching InterFirst Underwriting Report.) This newly-produced document, dated May 28, 2002, stated: "Loan declined due to credit history," and, significantly, did not identify information from Navy Federal as the basis for the denial of a $150,220 loan to the Kojises. (InterFirst Underwriting Report at 2.) According to Navy Federal, the document identifying InterFirst as the underwriter was never produced in response to discovery. (Rule 11 Mem. at 5.)

Despite Ms. Stell's testimony casting serious doubt on the authenticity of the Credit Denial forms, the Kojises continued to assert that Vicki Liposchak had been employed by Allied (thereby implying that she did sign the documents), and explained her failure to appear in Allied's corporate employment records by saying that her state-issued license remained in the name of her former employer. (Polony Aff. ¶ 7.) On July 28, 2003, Navy Federal took Ms. Liposchak's deposition. Ms. Liposchak testified that she had never worked for Allied and had never authored or signed the Credit Denial forms. (Rule 11 Mem., Ex. 8, Dep. Vicki Liposchak-Howe at 33.) Ms. Liposchak further

---

[5] Navy Federal also took the deposition of Royal Foust, the branch manager of Allied's Riverside, California office on July 29, 2003. (Rule 11 Mem., Ex. 15, Dep. Royal Foust at 5.) Mr. Foust testified that the only document in Allied's file reflecting an ultimate disposition of the Kojises' loan application showed that the application had been withdrawn. (Foust Dep. at 82.) Mr. Foust made that entry after keeping the loan application open for some period of time because Johnna Kojis had ceased working with Allied. (Foust Dep. at 83.)

testified that Johnna Kojis had asked her to sign the Credit Denial forms because Johnna Kojis had a lawsuit with Navy Federal and "really needed" Ms. Liposchak to sign the papers for her. (*Id.* at 34-35.) Ms. Liposchak testified that she had told Johnna Kojis that she did not feel comfortable doing that. (*Id.*) Ms. Liposchak testified that she realized later that Johnna Kojis must have forged her signature on the Credit Denial forms when she received a call from one of Navy Federal's attorneys asking her if she worked at Allied. (*Id.* at 37.) Ms. Liposchak testified that when she later questioned Johnna Kojis about the matter, Johnna admitted to signing Ms. Liposchak's name and apologized for doing so, but then asked Ms. Liposchak to agree to represent that she did in fact sign the forms. (*Id.* at 37-40.) According to Ms. Liposchak, Johnna Kojis indicated that lying about the authenticity of the signature and forms was not "that big of a deal" because the matter would probably never proceed to trial. (*Id.* at 40-42.) Ms. Liposchak testified that she continued to refuse to go along with Johnna Kojis' lie, and, within the next day, drafted a letter to Johnna Kojis dated June 30, 2003 wherein she reiterated her position that she would not participate in the lie. (*Id.* at 41, 50; Rule 11 Mem., Ex. 12, June 30, 2003 Ltr from V. Liposchak to J. Kojis.) When Johnna Kojis received the letter, she called Ms. Liposchak in one more attempt to convince Ms. Liposchak to lie about having signed the Credit Denial forms but Ms. Liposchak again refused. (Liposchak Dep. at 51-52.)

On July 17, 2003, Navy Federal served the Kojises with a deposition notice scheduling Johnna Kojis' deposition for August 7, 2003 and Stan Kojis' deposition for August 8, 2003. (Rule 37 Mot. ¶ 1.) At the Kojises' request, the depositions were rescheduled to August 20, 2003 at 10:30 a.m. and August 21, 2003 at 9:00 a.m., both at the offices of Navy Federal's attorneys. (*Id.*; Rule 37 Mot., Ex. A, Aug 13, 2003 Ltr from L. Smith to R. Polony, reflecting a copy to "Mr. and Mrs.

Kojis.") On August 20, 2003, at 9:45 a.m., a hearing was held before this court on Navy Federal's Motion to Compel Production of Documents and Inspection of Original Documents [dkt 25], which was granted. The Kojises were ordered to pay Navy Federal a monetary sanction of $450 after this court found that the Kojises' non-production of documents was not substantially justified. [Dkt 28.] That same morning, however, and on the subsequent day, the Kojises failed to appear for either of their depositions, even though they had assured their counsel, Amy Schwab, that they would be present. (Rule 37 Mot., Aff. Barry MacEntee ¶¶ 3-4; Ex. B, Tr. Aug. 20, 2003 at 5; Ex. C, Tr. Aug. 21, 2003 at 4.) Navy Federal's attorneys Barry MacEntee and Richard Polony were present, as was Equifax's counsel Brad Miller, who had flown to Chicago from Atlanta. (MacEntee Aff. ¶¶ 3-4.) Amy Schwab, the Kojises' counsel, was present by telephone. (*Id.*) The attorneys waited until 10:55 a.m. on both August 20 and 21, 2003 (25 minutes past the scheduled start time on August 20 and almost 2 hours past the scheduled start time on August 21) before convening the depositions and creating a record that the Kojises had failed to appear. (*Id.*; Tr. Aug. 20, 2003 at 4; Tr. Aug. 21, 2003 at 3.) On August 20, 2003, the Kojises' attorneys filed a Motion to Withdraw as counsel, which was granted by the District Judge on September 2, 2003. [Dkt 30, 31.]

On September 8, 2003, Navy Federal filed two of the three motions at issue here, namely, the Rule 11 Motion and the Rule 37 Motion. On January 16, 2004, after numerous extensions had been granted by the court, the Kojises finally responded to Defendants' Motions (although their response was not properly served until February 2, 2004). *See* dkt 50, 53, 54. Also on January 16, 2004, the Kojises filed their Motion for Relief from August 20, 2003 Order and Motion to Suppress Allied Denials and Howe[6] Deposition, and Motion to Dismiss Without Prejudice Due to

_____

[6] Ms. Liposchak's married last name is Howe.

Prosecutorial Misconduct or in the Alternative Motion to Change Venue. [Dkt 49.] The Kojises'

filing was stricken that same day for failure to be properly noticed and served. [Dkt 51.] The Kojises

re-filed their motion on January 28 and February 5, 2004 under the caption Motion to Dismiss

Without Prejudice Due to Prosecutorial Misconduct Plus Motion for Relief from August 20, 2003

Order And Motion to Suppress Allied Denials and Howe Deposition Also Due to Prosecutorial

Misconduct. [Dkt 56, 59.]


## Discussion

### A. Defendants' Rule 11 Motion

In support of their Rule 11 Motion, Defendants argue that the Kojises not only created forged

and fraudulent documents and submitted those documents in this lawsuit as evidence to support their

claims, but then tried to "cover their tracks" with even more fraud after their misconduct was

discovered, by "aggressively recruiting Ms. Liposchak to commit perjury on their behalf." (Rule 11

Mem. at 11, 15.) Defendants argue that "[c]reating fraudulent evidence to support one's claims

undermines the very integrity of the judicial process and seeks to perpetrate a fraud not only on the

defendants, but on this Court which is being asked to rely on the fraudulent evidence as a basis for

establishing liability and assessing damages." (*Id.* at 14-15.) They further argue that any future

proceedings based on evidence or testimony provided by the Kojises in this case would be "seriously

taint[ed]." (*Id.* at 15.) Defendants argue that they have had to spend "tens of thousands of dollars

defending plaintiffs' concocted claim and ferreting out the fraud on which it was based" and request

that the court enter an order dismissing the lawsuit with prejudice and holding the Kojises liable for

Defendants' costs and attorneys' fees in defending the lawsuit. (*Id.* at 13-14; Rule 11 Mot. at 2.)

The Kojises proffer a number of arguments in response, yet none attempts to refute the fact that the Kojises manufactured evidence including forged signatures. Indeed, Johnna Kojis admits that she created the Credit Denials and signed Vicki Liposchak's name to them. (Pls.' Opp'n at 2,6, 8.) Rather, their arguments merely go towards explaining *why* they manufactured evidence and forged Ms. Liposchak's signature. Their explanations are confusing, inconsistent, and, considered as a whole, reflect a complete failure to appreciate the seriousness of their actions.

The Kojises first assert that they never intended to present the Credit Denial forms into evidence because they were unaware that the Credit Denials were even in their Allied loan file when they sent it to their attorneys. (Pls.' Opp'n at 9.) However, they also state that Johnna Kojis manufactured the Credit Denial forms with Ms. Liposchak's signature to ensure that the Allied loan files were in compliance with the Real Estate Settlement Procedures Act ("RESPA"). (*Id.* at 6-7.) The Kojises claim that the detailed explanation included by Johnna Kojis on the fraudulent Credit Denial forms was only to prevent the embarrassment that would occur if her co-workers discovered that she had a bad credit history. (*Id.* at 7.) The Kojises argue that they did not need to forge documents to bolster their case because they were, in fact, denied two loans by a valid lender (InterFirst) with whom Johnna Kojis was not employed; they had always intended to enter the InterFirst denial letters into evidence; and they had even instructed their attorneys to do so. They claim that their attorneys presented the Credit Denials as evidence without their knowledge or consent, and they assert that if they had been informed by their attorneys that the Credit Denials were to be used (or were needed) as evidence, they would have asked Mr. Foust to sign new denial letters including the same paragraph explaining the reason for denial. (*Id.* at 1, 9.) They further argue that, although written by Johnna Kojis, the detailed explanation provided on the forms was accurate as

it was based on Johnna Kojis' conversation with an underwriter at InterFirst. (*Id.* at 7.)

With respect to Defendants' argument that the Credit Denials were forged, the Kojises argue that Ms. Liposchak gave Johnna permission to forge her signature (*id.* at 2, 8, 11), and that Ms. Liposchak's account that she never gave that permission should not be believed because Ms. Liposchak is a liar and was seeking revenge against the Kojises. (*Id.* at 2, 10-13.)[7] The Kojises further explain that Johnna Kojis had asked Ms. Liposchak to sign the documents for her because Johnna Kojis and Ms. Liposchak had frequently signed documents for each other in the past and Ms. Liposchak had recently accepted an offer to work as a Loan Officer at Allied on a trial basis (which she subsequently decided not to take). (*Id.* at 3, 8, 11.)

"Rule 11 requires that an attorney or party certify, to the best of his 'knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,' that any pleading presented to the court is not presented for an improper purpose, that the claims therein have a legally sufficient basis, and that the allegations and other factual contentions have evidentiary support." *Jimenez v. Madison Area Technical College*, 321 F.3d 652, 656 (7th Cir. 2003) (citing Fed. R. Civ. P. 11(b)). One of the basic purposes of Rule 11 is to deter baseless filings in the district court. *Id.* at 656 (citing *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990)). Courts may impose sanctions on a party or a party's counsel for failing to comply with Rule 11. *Id.* (citing Fed. R. Civ. P. 11(c)). These sanctions may include attorney's fees and costs and dismissal of a lawsuit.

After carefully considering the facts and arguments, this court concludes that dismissal of the

---

[7] To support this argument, the Kojises assert that Johnna and Ms. Liposchak had recently gotten into a "huge fight" stemming from Ms. Liposchak's lack of appreciation over the Kojises' gift of Credence Clearwater concert tickets, and that Ms. Liposchak had recently committed fraud to obtain a mortgage. (*Id.* at 4, 10, 12-13.)

Kojises' lawsuit with prejudice is the appropriate sanction for the Kojises' misconduct. The basis for the Complaint in this lawsuit is the documentation manufactured and forged by Johnna Kojis. The Kojises' argument to the contrary is simply inconsistent with history. The Kojises' Complaint is expressly premised on the denial of credit by Allied on *May 29, 2002*, the date of the fabricated Credit Denial forms. The damage alleged to have been caused by Defendants is the "[d]enial of credit *by Allied Mortgage Capital Corporation* on May 29, 2002." (Compl. ¶ 14) (emphasis added). There is no reference in the Complaint to the denial of credit by InterFirst. Only the fabricated Credit Denial forms refer to defendant Navy Federal as the basis for the credit denial; the InterFirst document does not. The Kojises' arguments that Johnna Kojis created the Credit Denials only to make sure that Allied's files complied with RESPA or to save herself some embarrassment are simply incredible and, in any event, do not excuse her misconduct. Although the Kojises argue that, under RESPA, it does not matter who signs the Denials (Pls.' Opp'n at 9), the fact that Johnna Kojis did not sign her own name or Mr. Foust's name evidences her awareness that what she was doing was not proper. Furthermore, contrary to the Kojises' assertion that they are "confident" that Mr. Foust would have signed new Credit Denials containing the same reason for denial as those prepared by Johnna Kojis (Pls.' Opp'n at 1, 9), Mr. Foust testified that he has never filled out a Credit Denial attributing the denial of credit to one specific creditor's report, and that he "would never consider" including the kind of language that Ms. Kojis included on the fabricated Credit Denials. (Foust Dep. at 166, 179.) Thus, it is apparent that the Credit Denial forms were manufactured to provide evidence supporting the Kojises' claim that Navy Federal was the reason for the denial of their credit applications.

The Kojises' credibility is further undermined by their instructions to their attorneys

contained in an e-mail that they submit as part of their Opposition to the motions. (Pls.' Opp'n, Ex. A., Feb. 3, 2003 E-mail from J. Kojis to A. Schwab.) Although the Kojises now "vehemently" assert that their attorneys never told them that this lawsuit would be filed in Chicago, and that they instructed their attorneys to rely on the InterFirst denials (Pls.' Opp'n at 1; Pls.' Mot. at 3-4), the Kojises' e-mail is precisely to the contrary. In that e-mail the Kojises confirm that they "have already made arrangements to come to Chicago in the even [sic] that this lawsuit goes to trail [sic]." (Feb. 3, 2003 E-mail from J. Kojis to A. Schwab at 1.) The e-mail continues: "My husband's sister lives in Chicago, we would be able to stay with her and we have thousands of frequent flyer miles available to make it back and forth if need be." (*Id.*) The e-mail also describes the Kojises' damages as: "Denial of a first mortgage from Allied Mortgage Capital Corporation. . . . Denial of a second mortgage from [A]llied Mortgage Capital Corporation." (*Id.*) InterFirst is not mentioned at all.

The Kojises' final argument – that Ms. Liposchak gave Johnna Kojis permission to forge her name – misses a key point. Even assuming, *arguendo*, that Ms. Liposchak agreed to allow Johnna Kojis to sign her name, that "permission" would not justify the creation of fabricated evidence; it would simply make Ms. Liposchak culpable as well as the Kojises. Moreover, the court concludes from the evidence presented that Ms. Liposchak did *not* give Johnna Kojis permission to forge her name on an Allied Credit Denial form. There is no reason why Ms. Liposchak would give that permission, and no reason why Ms. Liposchak would lie in her deposition. Ms. Liposchak's testimony is straightforward and logical. It is supported by Mr. Foust's testimony that Ms. Liposchak never worked for him (Foust Dep. at 42), contrary to the Kojises' statement that Ms. Liposchak accepted the position offered by Mr. Foust. (Pls.' Opp'n at 8.) Significantly, in signing Ms. Liposchak's name, Johnna Kojis did not add her own initials or otherwise indicate that she was

signing another person's name with that person's permission. The Kojises' attempts to discredit Ms. Liposchak's testimony are not only unpersuasive, but border on ridiculous. *See, e.g.,* Pls.' Opp'n at 10-11, attributing Ms. Liposchak's testimony to "a huge blowout" with the Kojises over Credence Clearwater concert tickets. In contrast, Ms. Liposchak's testimony that Johnna Kojis indicated that it was not "that big of a deal" (Liposchak Dep. at 42), is consistent with the Kojises' own argument to this court that, had they known the Credit Denials were to be used as evidence, they would simply have asked Allied's credit manager Royal Foust to send new credit denials with his signature. (Pls.' Opp'n at 1.) Apparently, the Kojises believe that documentary evidence can be created retroactively at any point in a lawsuit. The Kojises' arguments and behavior in this case lead to the conclusion that they are willing to say whatever is convenient at the time in order to obtain their objective of a large settlement from Navy Federal.[8]

Aggravating the Kojises' original transgression in fabricating the Credit Denials is the fact that, following Defendants' discovery that Ms. Liposchak had never worked for Navy Credit, Johnna Kojis asked Ms. Liposchak to lie and to state that she had in fact signed the Credit Denials. Ms. Liposchak's testimony on this point is straightforward and credible, as well as consistent with her letter to Johnna Kojis on June 30, 2003. (Rule 11 Mem., Ex. 12.)

Although dismissal of a lawsuit under Rule 11 is a severe sanction, "courts within the

---

[8] The Kojises' e-mail instructs their attorneys:

> I would need you to press hard on all issues so that we receive the settlement offer we deserve. Our damages are in a range of $300,000 - $500,000. This needs to be explained to NFCU immediately so that the offers for $5,000 increase dramatically to a level that would even be taken seriously.

( Feb. 3, 2003 E-mail from J. Kojis to A. Schwab at 1.)

Seventh Circuit have held that the court system has 'zero tolerance for parties who seek to intentionally distort the discovery and trial process.'" *Bogdan v. Eggers*, Nos. 96 C 1609, 96 C 1611, 2000 WL 1847608 at *12 (N.D. Ill. Dec. 14, 2000) (Keys, M.J.) (quoting *Quela v. Payco-General Am. Credits, Inc.*, No. 99 C 1904, 2000 WL 656681 at *7 (N.D. Ill. Mar. 26, 2000) (Castillo, J.)). Courts have found the acts of falsifying documents and suborning perjury to fall within the type of misconduct that will not be tolerated. In *Jimenez v. Madison Area Technical College*, No. 00-C-424-C, 2001 WL 34382042 at *7-8 (W.D. Wis. Aug. 13, 2001) (Crabb, J.), for example, the district court dismissed the plaintiff's discrimination suit with prejudice and entered an award of monetary sanctions against the plaintiff's attorney pursuant to Rule 11 after it found that the plaintiff had relied on falsified documents to bolster her discrimination claims. The Seventh Circuit affirmed the district court's order and found the sanction to be within the trial court's discretion "[i]n light of the willful and malicious nature of Jimenez's flagrant Rule 11 violation." *Jimenez*, 321 F.3d at 657. Other cases have been dismissed pursuant to Rule 11 for similar misconduct by a plaintiff. *See, e.g., Bogdan*, 2000 WL 1847608 at *12 (dismissing plaintiffs' case and awarding defendants their fees and costs pursuant to Rule 11 where plaintiff suborned perjury and concocted discrimination claim); *Pope v. Federal Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992) (affirming dismissal with prejudice of plaintiff's lawsuit as Rule 11 sanction where plaintiff manufactured evidence and offered perjured testimony to enhance her case); *Combs v. Rockwell Intl. Corp.*, 927 F.2d 486, 488-89 (9th Cir. 1991) (affirming dismissal with prejudice under Rule 11 where plaintiff authorized counsel to alter his deposition transcript in material respects, signed the revised deposition and swore under penalty of perjury that he had reviewed the transcript and had made the changes himself.)

As the Supreme Court has stated, the sanction of dismissal must be available to district courts in appropriate cases "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). As one court stated in a case involving similar misconduct:

> Permitting this lawsuit to proceed would be an open invitation to abuse the judicial process. Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues. Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.

*Brady v. United States*, 877 F. Supp. 444, 453 (C.D. Ill. 1994) (citation omitted). Accordingly, the court recommends that the Kojises' suit be dismissed with prejudice.

In addition, Defendants incurred substantial costs and attorneys' fees untangling the web created by the Kojises. This court believes that the Kojises should be required to pay those costs and fees caused by the Kojises' egregious conduct. As the court in *Bogdan* stated, such a sanction "will not only compensate Defendants for their fees and expenses in defending this litigation, but will also deter Plaintiffs and others in the future from instituting baseless litigation and abusing judicial resources." 2000 WL 1847608 at *13 n. 27. *See also Nisenbaum v. Milwaukee County*, 333 F.3d 804, 808-11 (7th Cir. 2003) (remanding a portion of the case and indicating that the plaintiff should be required to pay attorney's fees under Rule 11 for filing a frivolous action); *Methode Elecs., Inc. v. Adam Techs., Inc.*, No. 03 C 2971, 2003 WL 21799934 at *10-12 (N.D. Ill. Jul. 25, 2003) (Grady, J.) (ordering plaintiff and its attorney to pay defendant's expenses and attorney's fees as Rule 11 sanction where plaintiff made false allegation in complaint in an effort to deceive the court); *Blossom v. Blackhawk Datsun, Inc.*, 120 F.R.D. 91, 103 (S.D. Ind. 1988) (ordering defendants and

-15-

attorneys to pay plaintiffs' attorney's fees and expert witness fees for having to defend a frivolous and baseless counterclaim).

Defendants took Ms. Stell's deposition as Allied's designated representative under Rule 30(b)(6) because the Complaint alleged that the Kojises were injured by Allied's denial of credit. The fabricated Credit Denials were tendered to Defendants in support of that allegation. To get to the bottom of the questions remaining after Ms. Stell's deposition, Defendants had to depose Ms. Liposchak and Mr. Foust. Defendants then had to prepare and file the present motions with supporting memorandum and reply. All of this resulted from Johnna Kojises' creation of the fabricated Credit Denials. Thus, this Court respectfully recommends that the Kojises be required to reimburse Defendants for their reasonable costs and fees incurred in those activities.

## B. Defendants' Rule 37 Motion

In their Rule 37 Motion, Defendants argue that the Kojises should be sanctioned for their failure to appear for either of their depositions after having been served with a deposition notice scheduling those depositions. (Rule 37 Mot. ¶¶ 1-4.) Defendants further note that the Kojises' failure to appear followed the imposition of a monetary sanction resulting from their failure to produce documents, as well as Ms. Liposchak's testimony that the Kojises created fraudulent documents and suborned perjury to further their case. (Rule 37 Mot. ¶¶ 6, 7.) Defendants request dismissal of the Kojises' action and an order requiring the Kojises to pay Defendants' attorneys' fees and costs in defending the lawsuit. (*Id.* ¶ 8.)

The Kojises did not file a response to the Rule 37 Motion; however, in their Motion to Dismiss, discussed below, they argue that they failed to appear for the August 21 deposition because

they were "deliberately" given the wrong time to appear. (Pls.' Mot. at 11.) Specifically, the Kojises claim that Ms. Schwab advised them via e-mail that they needed to be at her office by 9:45 a.m. on August 21, 2003, even though the deposition was actually scheduled to commence at 9:00 a.m. that day. (Id.; Pls.' Mot., Ex. II, August 20, 2003 E-mail from A. Schwab to Kojises.) In their Reply, Defendants point out that Ms. Schwab had issued a correction to her e-mail later that day advising the Kojises that they actually had to be at her offices by 8:30 a.m. (Reply at 7; Ex. 19, August 20, 2003 E-mail from A. Schwab to Kojises.) In any event, the lawyers waited until 10:55 a.m. on August 21 for the Kojises to appear for deposition, and they never did. The court takes judicial notice of the fact that, had the Kojises arrived at the offices of Krohn & Moss, 120 W. Madison, Chicago, at 9:45 a.m., as they now assert they were instructed to do, they could easily have made it to the offices of Navy Federal's counsel (Hinshaw & Culbertson, 222 N. La Salle St., Chicago) by 10:55 a.m. Strikingly, the Kojises do not assert that they in fact went to the offices of Krohn & Moss on August 21, 2003.[9] Furthermore, the Kojises offer no excuse for their failure to appear for the deposition on August 20, 2003.[10]

Federal Rule of Civil Procedure 37(d) provides that:

> If a party . . . fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule . . . . In lieu of any order or in addition thereto, the court shall

---

[9] In contrast, the Kojises state that they were at Krohn & Moss' offices the following day, August 22, 2003. (Pls.' Mot. at 11.)

[10] Apparently, the Kojises were in Chicago on August 20, 2003. An e-mail from Johnna Kojis to attorneys Larry Smith and Amy Schwab attached to the Kojises' motion states that the Kojises will be leaving California at 3 p.m. and arriving in Chicago at 10 p.m. on Tuesday, August 19. (Pls.' Mot., Ex. F, Aug. 19, 2003 E-mail from Kojises to L. Smith and A. Schwab.)

> require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(d). Among the actions authorized by subparagraphs (A), (B), and (C) is "[a]n order . . . dismissing the action or proceeding or any part thereof." Fed. R. Civ. P. 37(b)(2)(C). Thus, Rule 37 gives the court the authority to dismiss a plaintiff's action as well as to impose attorneys' fees and costs because that plaintiff has failed to appear for his or her own deposition. Fed. R. Civ. P. 37(d). *See Dotson v. Bravo*, 202 F.R.D. 559, 576 (N.D. Ill. 2001) (ordering dismissal with prejudice under Rule 37 for plaintiff's failure to properly and truthfully respond to discovery requests and for otherwise willfully engaging in obstructive discovery tactics); *Quela*, 2000 WL 656681 at *7-8 (ordering default judgment against defendants under Rule 37 where defendant supervisors coerced fraudulent statements and testimony from one of defendant's employees to support its case); *Halas v. Consumer Servs., Inc.*, 16 F.3d 161, 162 (7th Cir. 1994) (affirming dismissal of suit under Rule 37 where plaintiff failed to attend his deposition, which had been repeatedly rescheduled to accommodate him, and to comply with discovery orders); *Tamari v. Bache & Co.*, 729 F.2d 469, 471-72, 474 (7th Cir. 1984) (affirming award of reasonable attorney fees and costs incurred due to plaintiffs' failure to attend their depositions by scheduled deadline and to comply with discovery orders).

In many cases, dismissal of the lawsuit might be too harsh a sanction if the failure to appear for deposition were the only transgression. However, in this case and in light of the foregoing facts, this court finds that the Kojises' *repeated* unexcused and unexplained failure to appear for their own depositions, of which they clearly had notice, is an additional and independent justification for

-18-

dismissal of this lawsuit pursuant to Rule 37. The issue remains as to whether the expenses fruitlessly incurred by Defendants due to the Kojises' failure to attend their depositions should be included in the amount awarded to Defendants. On one hand, there is evidence that the Kojises flew from California to Chicago and requested instructions from their attorney as to the best way to get from their hotel to the attorney's office. (Pls.' Mot. to Dismiss at 11; Tr. Aug. 20, 2003 at 5-6; Tr. Aug. 21, 2003 at 3-5; August 20, 2003 E-mail from A. Schwab to Kojises.) On the other hand, three of Defendants' attorneys in the case were forced to wait a total of 2.5 hours over the two days on which the depositions were scheduled, and presumably spent time preparing for those depositions. In addition, one of the attorneys had flown in from Atlanta for the deposition.

Based on those facts, the court recommends that the Kojises be ordered to pay reasonable fees for the time spent by Navy Federal's and Equifax's attorneys on August 20 and 21, 2003 waiting for the Kojises to appear for their depositions and the court reporters' fees, in addition to the amounts awarded pursuant to Rule 11. That sanction is appropriate in light of the fact that the Kojises never provided any legitimate reason for their failure to appear. *See Traylor v. Central States*, No. 83 C 2206, 1986 WL 1835 at *1-2 (N.D. Ill. Jan. 28, 1986) (Kocoras, J.) (denying plaintiff's motion to reconsider award requiring *pro se* plaintiff to pay defendant's reasonable expenses, including attorney fees, incurred in preparing for plaintiff's deposition which failed to proceed on the scheduled date, where plaintiff's justification was that he "was in Chicago at the designated time and place . . . to give [his] deposition").

## C. Plaintiffs' Motion to Dismiss Without Prejudice, Motion for Relief, and Motion to Suppress

In their motion, the Kojises request that their complaint be dismissed without prejudice so that they may re-file their action in another jurisdiction. (Pls.' Mot. at 1.) In support of their motion, the Kojises argue that their attorneys committed ethical violations and were negligent in litigating their case. (*Id.* at 1-9.)[11] The gist of the Kojises' argument is that they would have fared better in their lawsuit if their attorneys had followed their instructions as to how the case should be litigated. The court does not find the Kojises' arguments persuasive, particularly in light of their misconduct discussed above, and the Kojises' own e-mail instructions to their attorneys, quoted above. Indeed, as Navy Federal states in its Response: "Plaintiffs' conduct in this case – forging documents, manufacturing evidence, suborning perjury – casts doubt on [the Kojises'] allegations." (Navy Federal's Resp. at 2.) That conduct is neither justified nor explained by the Kojises' complaints about their attorneys. Notably, there is no evidence that the Kojises raised the present complaints with their counsel during the year-and-a-half duration of the lawsuit before the revelations about the fabricated Credit Denials. The Kojises' arguments are consistent with what the court has already concluded, namely, that the Kojises are clutching at straws in an effort to shift the blame away from themselves. If the Kojises have a legitimate complaint against their former counsel, that should be addressed with that counsel. It does not justify allowing the Kojises to continue their claims against Defendants. Thus, this court respectfully recommends that the Kojises' motion to dismiss without

---

[11] The Kojises state that their counsel "deprived [the Kojises] of their right to gain evidence through discovery," refused to provide the Kojises with a copy of their file after withdrawing as counsel, ignored most of their e-mails and calls, failed to keep them updated on their suit, entered the "wrong documents" into evidence, ignored their request to litigate the lawsuit differently, failed to respond to Navy Federal's request regarding the allegations of fraud, and failed to contact any of their witnesses. (Pls.'Mot. at 1-5.)

prejudice be denied and that their Complaint be dismissed with prejudice.

In addition, the Kojises request that the Allied Credit Denials and Ms. Liposchak's deposition testimony be "suppressed." (Pls.' Mot. at 1.) In support of that part of their motion, the Kojises argue that the Credit Denials "were wrongly entered into evidence by [their] former attorneys" and Ms. Liposchak's deposition "resulted from the fruits of a poisonous tree." (*Id.*) Assuming, *arguendo,* that the court has authority to "suppress" the documents and deposition testimony, no reason exists why such authority should be exercised here. However, part of the motion can be denied as moot based on the court's recommendation that the Kojises' case be dismissed with prejudice.

Lastly, the Kojises argue that they should be relieved from the court's August 20, 2003 order requiring them to pay $450 as a sanction for failing to produce documents in a timely manner. (*Id.* at 10.) That order was entered because, by August 20, 2003, the day their depositions were to begin, the Kojises had produced only three documents in response to Navy Federal's requests for production served on July 8 and July 11, 2003, to which no objection had been made. (Navy Federal's Mot. Compel Prod. Docs. at ¶¶ 1, 2, 8.) [Dkt 25.] Notably, the Kojises did not appeal the ruling to the District Judge, and did not ask for relief from the ruling until the filing of the present motion, on January 28, 2004, five months after the entry of the order. In support of their present argument, the Kojises assert that their attorney, Larry Smith, did not notify them of Navy Federal's request to produce documents until after Navy Federal had filed its motion to compel those documents. (Pls.' Mot. at 10.) The Kojises assert that they began gathering the information requested immediately after receiving notice of the request from Mr. Smith, but "hit a few snags along the way." (*Id.*) They further argue, in support of their diligence, that they e-mailed Mr. Smith

-21-

daily as to the status of the documents, but that Mr. Smith failed to provide any reasonable explanation on their behalf at the hearing on the motion to compel. (*Id.*) The sum of the Kojises' argument is that they were not aware that the documents were needed until shortly before the hearing on the motion to compel, and that was not enough time for them to gather the documents requested. Again, that issue is between the Kojises and their former attorneys. The Kojises have not shown that the decision to grant relief to Navy Federal was in error. Accordingly, this court respectfully recommends that Plaintiffs' motion be denied in its entirety.

## Conclusion

For the foregoing reasons, this court respectfully recommends:

I. That Defendants' Motion for Sanctions Pursuant to Rule 11 and Rule 37 Motion for Terminating Sanctions be granted as follows:

(a) That Plaintiffs' Complaint be dismissed with prejudice; and

(b) That Plaintiffs Stan and Johnna Kojis be required to pay:

(i) The reasonable attorneys' fees and costs incurred by Defendants in taking the depositions of Jeanne Stell, Royal Foust and Vicki Liposchak (including reasonable preparation time, but excluding any interoffice conference time); and

(ii) The reasonable attorneys' fees and costs incurred by Defendants in preparing and filing the Rule 11 and Rule 37 Motions, supporting Memoranda and Reply (excluding any interoffice conference time); and

(iii) The reasonable attorneys' fees incurred for the time spent by Defendants' attorneys on August 20 and 21, 2003 waiting for the Kojises to appear for their depositions, and the

court reporters' fees for those depositions; and

II. That Plaintiffs' Motion to Dismiss Without Prejudice Due to Prosecutorial Misconduct Plus Motion for Relief from August 20, 2003 Order And Motion to Suppress Allied Denials and Howe Deposition Also Due to Prosecutorial Misconduct be denied in its entirety.

Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the district court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this court in the report and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

Geraldine Soat Brown
United States Magistrate Judge

May 5, 2004

-23-